We call the next case please. 315-0001, Nationstar Mortgage LLC, count by Amy DeLeo v. Herbert Saunders et al. athletes by Scott Hoster. Here's DeLeo. Good morning. Good afternoon. May it please the court, counsel, Amy DeLeo on behalf of appellant Nationstar Mortgage LLC. The two issues before the court today are whether the trial court properly determined that Herbert Saunders, a subsequent purchaser to a sheriff's sale, was a bona fide purchaser for value such that he took his interest in the property free and clear of Nationstar's mortgage lien. Additionally, whether the trial court properly determined that Section 1509C of the Illinois Mortgage Foreclosure Law bars Nationstar's claims. Now Nationstar seeks to foreclose in this matter a mortgage which was originated by Taylor Bean and Whitaker Mortgage, Inc. in December 30th of 2005. Taylor Bean had made a loan to Jack Huff and Donna Huff in an amount of $250,400 on December 30th, 2005. In exchange, Taylor Bean was to receive a first lien mortgage on the property. On the same day that Taylor Bean made its loan, the Huffs also received another loan from Fifth Third Bank in the amount of $55,000. Fifth Third was supposed to receive a second lien. Unfortunately, for whatever reason, the Fifth Third loan was recorded first and the Taylor Bean mortgage was recorded second. I also want to point out that the Taylor Bean... How much time separating the two? The Fifth Third mortgage was recorded on February 22nd, 2006, and the Taylor Bean mortgage was April 13th, 2006, so it was a couple months. Why such a delay? I don't know, Your Honor. Who knows? It was probably recorded by the title company. Unfortunately, these things kind of happen. So I won't dispute the fact that Fifth Third is recorded first. However, it is Nation Star's position that it was intended to be the first lien mortgage holder. Anyway, the present foreclosure proceeding was commenced on January 25th, 2011 by Saxon, who had received an assignment from Taylor Bean. Shortly after filing the foreclosure action, it had learned that the successor in interest to Fifth Third had already filed a foreclosure proceeding on the property in 2008, in which it had foreclosed upon its $55,000 mortgage lien. And Saxon learned that in that 2008 foreclosure proceeding, an order had been entered which had purported to adjudicate its lien interest and extinguish its lien on the property. Shortly after discovering this, it filed a motion to caution that 2008 proceeding and that judgment which purported to, that entered judgment against Taylor Bean and to extinguish that lien interest was vacated. So the judgment which purportedly extinguished the lien interest has been vacated by Judge Siegel in the 2008 proceeding. But what happened in between? Didn't something happen before the judgment was extinguished? Well, we had filed our complaint here, yes. When was the property purchased? Oh, yes, the property, sorry, yes. So what happened after the, so in the 2008 proceedings, just to give you a quick recap of what happened, it was initially filed against the Hoffs and the Homeowners Association, and judgment was entered in February 24th of 2009. Subsequently, counsel had represented in a motion, she discovered the Taylor Bean mortgage and filed, was given leave to file an amended complaint to add Taylor Bean. The amended complaint was filed, a summons was issued to Taylor Bean, and then there was a motion to And the property went to sheriff sale, I should say, on, sorry, the judgment was entered on November 10th, 2009, and the property actually went to sheriff sale on November 18th of 2009. And then it was sold to the bidder at sale, who then transferred it to a Mr. Muhammad, who then transferred it to Herbert Sanders. The date of the deed transferring it to Herbert Sanders is September of 2010, and it was recorded in October of 2010. So in essence, when we filed our mortgage foreclosure proceeding, Mr. Saunders was served, and he filed an affirmative defense, asserting he was a bona fide purchaser for value. Cross motions for summary judgment were heard, and the trial court granted summary judgment in favor of Mr. Saunders. The court erred in granting summary judgment in favor of Mr. Saunders. First, the court incorrectly applies Section 1509C of the Illinois Mortgage Foreclosure Act. Section 1509C provides that once a title has been transferred by a judicial sale, that any party to the foreclosure or any non-record claimant who had notice of the provision is not applicable here, because 1509C is only applicable when there is a valid judgment. The First District has addressed this issue in Deutsche Bank v. Brewer, and it expressly found that that provision only applies when there is a valid judgment. Here, it has been the judgment that was entered purportedly against Taylor Bean has been vacated and found to be void for lack of service. Therefore, 1509C just does not apply. Next, the trial court also incorrectly found Saunders to be a bona fide purchaser for value, because the record in the 2008 foreclosure proceeding affirmatively shows there was no service on Taylor Bean. Section 1401E of the Illinois Code of Civil Procedure provides that unless lack of jurisdiction affirmatively appears from the record, that a vacated judgment of foreclosure does not affect a subsequent purchaser's rights. So if there is an affirmatively appearing from the record in the 2008 proceeding that there was a lack of jurisdiction over Taylor Bean, then Mr. Saunders is not a BFP. Here, it is blatantly apparent from the record that there was no jurisdiction over Taylor Bean. Therefore, Mr. Saunders is not a BFP. The Supreme Court in State Bank v. Lake Zurich v. Thiel has kind of given direction on what we look at in order to determine whether a lack of jurisdiction is apparent from the record. And the Supreme Court has said we look at things, we look at the pleadings, we look at the return of service, we look at the judgment that was entered. So if you look at the record as it existed in September of 2010, when Mr. Saunders took title, in the 2008 foreclosure proceeding, there was no affidavit of service filed. There was no affidavit of service filed showing that Taylor Bean had been actually served with a summons and a complaint. If you had looked at the record in September of 2010 in the 2008 foreclosure proceeding, all you would have found was a motion to amend judgment. That motion to amend judgment was a two-page motion. It did not attach any affidavits, any proofs of service. It was not verified. It was a two-page motion and it indicated that Taylor Bean had recently been added as a defendant. And then in paragraph 5, so this is the common law record, the motion to amends are on C356-357. In that motion to amend, it indicates that Taylor Bean served by Saxon. However, paragraph 6 says, Saxon, formerly known as Taylor Bean, was served on October 8, 2009. Now again, Local Rule 4.09 requires you to file a proof of service. The motion to amend does not attach proof of service. So there's no affidavit saying we served Taylor Bean on this date at this location with the summons and the complaint. Additionally, the motion to amend contradicts itself. It says first that Taylor Bean has ceased operations. And then in the very next paragraph, it says, well, Saxon is formerly known as Taylor Bean. So which is it? Did Taylor Bean go out of business and now another entity is servicing? Or did Taylor Bean merely change his name to Saxon? This is an inconsistency that should have put Mr. Saunders on notice and would make him not a BFP. Now, the motion was designed to do what? The motion was designed to make sure the Taylor Bean mortgage lien was extinguished. And the motion was granted? The motion was granted. Okay. And then what happened after that judgment was entered? It went to sale very shortly thereafter. But you're saying that just by looking at that motion defeats the BFP position of Saunders. Yeah. Well, first of all, there's no proof of service. I think just the lack that there was no evidence that Taylor Bean had been served, I think that's an apparent defect. Well, what is the standard for a BFP? Is it reasonable efforts, reasonable inquiry? Is there some type of common law standard here? Well, you're charged with notice of everything within the record. In the court record, you're also charged with notice of everything within the recorder of deeds record. And you're charged with constructive notice of anything that a reasonable inquiry you would have discovered. When looking at the cases discussing what a BFP is under 1401E and what it means that there's an apparent, there's an affirmatively apparent defect in jurisdiction from the record. So the Supreme Court in the field discussed this. It says, you know, when you're trying to determine whether the lack of jurisdiction is apparent from the record, you look at everything. You look at all the pleadings. Now, you don't have to, there's language you don't have to comb through. But if you do a review of everything that was filed with the court, you know, it's a defect. So we're really saying the lack of an affidavit of service to this motion is sufficient? Yes. And then on top of it, I think the motion to amend also creates other things that should have put Mr. Saunders on inquiry notice so that he would have inquired further. The formerly known as? The formerly known as. Has Taylor Bean ceased operations or has it just changed its name? Saxon, I mean, you know, just as a side note, I think it's been clear in the record, Saxon was never formerly known as Taylor Bean. They've always been two separate entities. Also, additionally, you know, if Taylor Bean had ceased operation and the new proper party was Saxon, Saxon should have been named as a defendant and then served with the summons that had been issued to Saxon and given time, you know, to respond there, too. And that didn't happen here. And I think it just created a question. He entered after the motion was not incorporating Saxon. Right. Additionally, I think there's another question here. You know, a party is charged with notice of what's recorded in the registrar's office. The mortgagee of record was MERS, you know, and MERS was never made party to this 2008 foreclosure proceeding. You know, so I think that creates an inquiry notice on Mr. Sanders' part as to whether, you know, did we actually bring in the right party to this proceeding? Was there a judgment? So I think there are several things in the record which affirmatively show there was a lack of jurisdiction over Taylor Bean. Do you want to discuss how bankruptcy complicated the situation? So, yes. In prior to the motion to amend judgment, just prior to, you know, the month before, Taylor Bean had filed for bankruptcy protection, which is probably why. When they were still a lien holder. Yes. Their interest hadn't been transferred to anybody. Right. Their interest had not been transferred to anybody. They had filed for bankruptcy protection. If they had, you know, been served, well, first of all, I think if somebody had done an inquiry, just a simple Google search in October of 2010, they would have discovered, oh, Taylor Bean has filed for bankruptcy protection, therefore I'm going to need to go to the bankruptcy court before I can, you know, to seek leave before I can serve them and make them a party to this suit. And that was not done. I mean, honestly, if you had looked at the motion to amend and it said ceased operations, I think anybody who had done a reasonable inquiry as to what it meant that they ceased operations would have discovered they had filed for bankruptcy. Counsel, just two minutes. Was Taylor Bean served with notice of the motion to amend and were they present when that was done? No. Saxon was served with a motion to amend. And Saxon at the time did not have a mortgage, you know, an interest in the property. They weren't named a party, so they, you know. Were they present? Were they present? When the motion to amend was allowed. It was November 10th, 2009. No. Saxon was not present. Subsequent, after we had filed the motion to quash and we were briefing the issue about whether to vacate the judgment, somebody did order the transcript from that day. And it appears that Lawrence Goldstein stood up and said, I represent Saxon and this is an agreed order. And the order to amend was entered. However, if you look at the clerk's docket, the sort of electronic docket, Lawrence Goldstein had checked in that day as the attorney for plaintiff. Lawrence Goldstein had appeared several times prior to November 10th. Which was Midwest First or whatever the name of the plaintiff is? It was Mortgage First, yes. So he had appeared, he had signed in with the clerk as counsel for Mortgage First. He had previously appeared in court on behalf of Mortgage First. I think he probably just misspoke when he said, I represent Saxon. But who knows? We're all speculating here. But so there was a contradiction between what the clerk's docket said, who he represented for the judge. He represented that it was an agreed order. It was not an agreed order. I'm not sure why he said that again. So this likely kind of explains why the judge just sort of entered the order that day. What interest did Saxon have in any of this? Saxon, at the time it was not a servicer. It subsequently was assigned the mortgage lien interest subsequent to the entry of the order and subsequently was the servicer. At the time, my understanding is, and this came out when they were briefing the motion to quash, is counsel for Mortgage First had initially sent the summons and complaint to Taylor Bean's registered agent in Oak Brook and it had been returned to her. So she apparently called somebody, spoke to somebody named Rodney, whose title we don't know, and Rodney said, oh, Saxon's now servicing this. And so based upon that, she just served Saxon with the summons for Taylor Bean and the complaint was named Taylor Bean and represented that that was sufficient service to the court. Thank you. Mr. Hastert? Yes, sir. Good afternoon, members of the panel. Good to be back again. Thank you. I'm Scott Hastert from Joliet, Illinois. I represent Mr. Saunders and I believe Mr. Saunders is a BFP. This is a case involving, well, first off, Judge Stanis, I believe, made the right decision. He called my client a BFP. I do not know why he went under 1509C in the Mortgage Foreclosure Act. When Frank Andreano and I were arguing these motions in front of him, we were saying, Judge, it's 2-1401E, and he just kept saying, well, I think 1509 applies. And we kept saying, respectfully, Judge, we both think you're wrong. And he put it down in his order that it's 1509, but I think he reached the right decision but under the wrong section of the law, so I want to be extremely candid and upfront about that. Now, secondly, 2-1401E is a good piece of legislation. It's intended to protect BFPs from attacks on mortgage foreclosures. As you two wrote recently on the hospital case about lawmaking being like sausage making and things of that nature, no law is perfect, and you can't cover all the situations. But I think 2-1401E was intended to give BFP status to these third parties that bid at sheriff sales, because third parties that bid at sheriff sales are kind of like in the Wild West. The cases all say it's kind of laissez-faire, caveat emptor. You know, if you put a bid in at a sheriff sale, it's an irrevocable offer. So I think the purpose of 2-1401E was to say, okay, if you bid at a sheriff sale and you do it in good faith and you don't have any notice that there's anybody out there laying on the weeds, we're not going to penalize you for bidding at a sheriff sale, because we want people other than banks to bid at sheriff sales, to move property and rehab them. So that's what happened. Now, that was really brought to the Illinois Supreme Court, that statute, for the first time in 1986, 30 years ago, in this case called Thill, T-H-I-L-L, State Bank of Zurich versus Thill. And the facts in that case are, I think, crucial, and what distinguishes it from this case. In Thill, Mr. Thill was not served. But the confirmation of sale in Thill took place on October 18th of 1983. The record from the Illinois Supreme Court says two days later, October 20th, Mr. Thill gets a phone call from the party that bought the house at the sheriff sale, and he says, Mr. Thill, I'm really sorry, but I bought this at the sheriff sale in the foreclosure. You and your wife and kids are going to have to leave within 30 days. That's the law. I'm really sorry. And Mr. Thill goes, what? I was never served. My wife didn't give me anything that she was served with, even though you said she was served. And so, again, sale's on October 18th. The phone call occurs October 20th. And October 31st, 13 days after the sheriff sale, Mr. Thill is in court with a special and limited appearance saying, I was never served, there was no jurisdiction, vacate this thing. So he's within 30 days of the sale itself coming in saying he was never served. The Illinois Supreme Court then gave us four prongs for BFP. They say you look at the pleadings, you look at whether there's a return of service or process, you look at the jury verdict, which there wasn't a jury case in the foreclosure, and then you look at the judgment of the court, what does the court order say. So those are the four prongs. And Thill says, basically, you are a BFP if inquiry beyond the face of the record is required. So if the record is a little murky and it's not clear whether or not there's a defect, you're protected as a BFP. You're only not a BFP if you go in and it's just completely obvious that there's a defect in the record. So that's what the quote from Thill that everybody talks about is inquiry beyond the face of the record. So how about no return of service? Well, that happened in this case. There is nothing in the file. Again, to be just straight out, there's nothing in this case. Kimberly Weisman, if she served him, she couldn't find it. But I can tell you what happened because I was kind of here through this whole thing. Before I get to that point, if the court would indulge me just for a minute, I went through the Thill facts with particularity because this is a different situation. A company out of Will County called Midwest Capital bid at the sheriff's sale after Ms. Weisman added Saxon, who was in the second position. They were recorded in the second position. She realized that. She filed a motion that we can talk about in a couple minutes to add them as a party. And she convinces Judge Siegel that she had served them, and she gets Judge Siegel to sign an order amending the judgment of foreclosure, terminating Saxon's interest. Saxon had the second position, putting the thing up for sale. It goes up for sale in November or December of 2010. Now, Midwest Capital buys it at the sale. Midwest Capital transfers their bill of sale rights over to a gentleman named Mr. Muhammad. Mr. Muhammad gets the sale confirmed. Mr. Muhammad rehabs the house. And ten months after the sale is confirmed, my client, Mr. Saunders, buys it through a realtor. The property had been listed and all of that. So in Thill, you were talking about Mr. Thill coming in within 13 days of the sale. Well, here, my client buys this house about ten months after the sale. So I raise a question, what is he supposed to look at? Who did the title search? Title company. But what do they rely on, Your Honor? They rely on, frankly, title searchers look at what you folks put. If they see Judge Richard Siegel signing an order saying Saxon's rights are terminated, I don't know any title searcher that goes back and checks the process or anything like that. I mean, they review court orders. They look to see if you folks say that the rights are terminated. And if it's terminated, it's terminated. That's what a title searcher does. But my only point with that, Justice, was this. My client bought this property ten months after the sheriff's sale. Yeah. Saxon didn't. And it was in October of 2010. Saxon foreclosed this thing like in April or so of 2011 is when they filed, I believe. If my guy had gotten a job transfer or something and he only lived in the house for three months, you know, he sold it to somebody else. I mean, where does this building get cut off? If this house gets sold five, six times over a six-, seven-year period, does each one of those people have to literally go to the court file and look to see if there was service of process? I mean, that just doesn't happen. I mean, it happened in full because you had about a two-day period and you were dealing with the third-party purchaser that actually buys these things at the sheriff's sale. But 2-1401, to find that my guy is not a BFP, I think is going to really stretch it because you're talking about title changing hands a couple of times before my client got the property. The person that your client purchased from was Shaheen, is that the name? Muhammad is his last name, yes, ma'am. He spent $67,000 on this property that was secured by mortgages in excess of $200,000? He was a successful bidder on the first mortgage because that was foreclosed. The second mortgage was reported, yes, ma'am, and the second mortgage was larger than the first, and no doubt about that. So let's look at what your client paid. I mean, maybe Mr. Muhammad would have reason to think something was amiss because he was getting something nice. He could be sitting there looking at it saying, I'm getting a bargain, or why was the lender dumb enough to put this bigger mortgage as the second mortgage? You know, no question. Your client purchased it for $189,000? Full price, yes, yes. Is there some reason that he should have been suspicious? No, because, I mean, there were two mortgages, I think, $60,000 and $140,000, something like that, so there may have been $200,000 worth of mortgages on it. He buys it from a guy named Muhammad who fixes it up after he picks it up at a sheriff's house, so my guy paid full price, I believe. I mean, but is your argument that the title company folks that search these titles don't have a duty to look to see if there's jurisdiction when they look at an order? I mean, doesn't that fall in the face of a holistic case law? No, sir, I don't think it does. I mean, in the real world, you're right, there's title insurance. I mean, we're not supposed to talk about that, right? Just like in a PI case, we're not supposed to talk about insurance, but you folks know how the world works. But every title searcher that I know relies on court orders, and they don't go back. I mean, once for a whole bunch of times. I know, yes, sir. Every once in a while, they get a bit fanny, right? That would be true, Judge, that would be true. 99, what, 99? Since we're talking about that, which we're not supposed to talk about. Yes, sir. 99.999% of the time, title insurance premiums are free money, right? No, I can't argue that. I can't argue that, Judge. Every once in a while, they get a pony out. Well, they have to pay claims, and the claims are usually big. I mean, I've represented title companies for 30 years, so, you know, okay. I agree with you, can't disagree with you, Judge. Let me just go to, if I've got a little time, what would Mr. Saunders have seen had he gone to the court file and looked? And let's just say, what would the title company see when they went to the court file and looked? Well, as I said, first off, they would have seen that this was a second mortgage and not a first mortgage. So that is significant, I think, and I'll get to that in just a second. But, okay, Kimberly Weisman is the attorney for the mortgage that's in the first position. She files a motion as an officer of the court in paragraph 6 of her motion that says, Taylor Bean and Whitaker, the holder of the second mortgage, was served. That's in the pleadings, and Phil says you can look at four things. You can look at the pleadings as well as whether or not there's proof of service in the file. Kimberly Weisman is an officer of the court, and she put in paragraph 6 of her motion that she filed on October 20th of 2009, Taylor Bean and Whitaker was served with summons. So she made that representation as an officer of the court in her motion. Then she sent notice of motion to Taylor Bean and Whitaker at their last known address. And I know we can argue if they've never been served, the court doesn't have jurisdiction, so sending them a notice of motion is kind of a novelty, and I understand that. But, again, a third party looking at the file says she notified them. Judge Siegel found the notice was good, the notice of motion was good. Judge Siegel accepted her representation that she had, in fact, served Taylor Bean and Whitaker. So that's the second thing. Then you have a little more in this case than probably your run-of-the-mill mortgage foreclosure case in that Judge Siegel grants the motion to terminate Taylor Bean and Whitaker's interest on November 20th of 2009, and the court order there says, do notice having been given to Saxon or Taylor Bean and Whitaker. So whatever Kimberly Weisman, well, we know what she said, because Larry Goldstein said it for her. But the order that was entered says Taylor Bean and Whitaker was served. And then, lastly, if the title searcher goes and looks at the file, you look at the physical court file in the clerk's office, now you can look at it online on the computer, you can also call the chief court reporter and say, I'd like to listen to what happened, because in Will County everything is digitally recorded. So the chief court reporter plays the recording. What does the recording say? I'm Larry Goldstein. I'm stepping up for Kimberly Weisman. I'm Larry Goldstein. And then he says, I'm appearing for Saxon. Now, I think Larry got confused, but Saxon is the holder of the second mortgage. Now, Larry steps up. He's a regular in the Will County courts. He steps up for Kimberly Weisman from time to time and covers her cases. But how would, you know, unless you knew the system like I did, how would you know who Larry Goldstein was? So Larry steps up and says, I'm appearing for Saxon, which is the holder of the second mortgage. And then Larry says, this is an agreed order, Your Honor, terminating Saxon's interest or making him the junior lien holder whose interests are foreclosed out. So, yes, Justice Schmidt, you don't find in the court file the proof of service that Saxon was served by the sheriff or a private detective, but you do find, you know, about everything else, you have two lawyers, two officers of the court representing to Judge Segal that Saxon was in fact served. Kimberly Weisman threw a motion and Larry Goldstein standing up there verbally handing Judge Segal an agreed order that says I represent Saxon and they're in the second position and we agree. We're done. Two minutes. Okay, thank you. With all of that, I think whether Mr. Saunders himself would have gone or in the real world, the title searcher goes. I think that's enough to rely on, Justices, for the title company to ensure this and I think therefore that makes in real life Mr. Saunders a BFP. So thank you for your good attention and questions. Anything else? Thank you. Thank you, Mr. Hastert. Is there a rebuttal, counsel? Just a few quick points I'd like to make on rebuttal. Counsel said, well, what was Mr. Saunders supposed to look at? Bill tells you what Mr. Saunders is supposed to look at. He's supposed to look at the pleadings. He's supposed to look at the returns of service. He's supposed to look at the jury verdict and the judgment that was entered. If Mr. Saunders had done that in this matter, he would have seen there were no returns of service. Therefore, he would have seen that there was no jurisdiction over Taylor Bean. So even if the judgment said there was, which is what we have. Yeah, yeah, and Bill addressed this plain on. That is exactly what the third-party purchasers in that case had said, Hey, there was a judgment entered, and in the recitals it says this court has jurisdictions, the parties were all properly served. And the Supreme Court says you cannot rely on a recital in a court's order when otherwise the lack of jurisdiction is apparent from the record. I would like to point out with There's been no motion to vacate the judgment based on fraud or misrepresentation. The judgment has already been vacated, and the basis was just that Taylor Bean was not properly served. And the court found they weren't served and has vacated the order. Judge Siegel vacated that judgment order. Which was subsequent to the purchase by Mr. Saunders. Yes, it was subsequent. Quite frankly, Saxon didn't learn of the foreclosure until they had filed their foreclosure complaint. I'm not sure exactly the circumstances, but it was approximately the same time when they had filed their foreclosure complaint that they first learned there had been this foreclosure action. Justice Holdridge and Justice Schmidt know how to make sausage. We found that out recently. But I've been in the courtroom for foreclosure cases. And sometimes I worry that it is practiced by secretary rather than by attorney. Do you think that contributed to this mistake? I have been in that courtroom. I've been many times in front of Judge Siegel. I don't know, first of all, what happened on the day of November 10th. Let's say my theory is correct. It wasn't really the judge's error. It was an error in the preparation of the petition for foreclosure and the documents, the assignments, the attachments. Where does the blame fall? We have a purchaser that is twice removed from the purchase at the sheriff's sale. Who bears the burden of that kind of sloppy practice? First of all, counsel made a point about Mr. Saunders being three times removed from the sheriff's sale. There is no case law that says once you get five transfers away from the sheriff's sale, you're no longer Mr. Saunders today. If somebody else buys from Mr. Saunders today, the same thing can happen to them. And when does it end? I don't think it does because I think anybody can look back. I mean, to take an analogy, when we look at what's recorded in the recorder of deeds, if something was recorded 50 years ago, 20 transactions ago, a purchaser today is charged with notice of that, even though it was recorded 50 years ago. It's the same thing. Anybody who subsequently purchases from Mr. Saunders would have notice in the recorders of deeds that there had been a mortgage made amers. The same person who's preparing the petition for foreclosure can examine the same documents. Right. I have the same information and prevent this from happening. Correct. And, you know, I... A proper title search would prevent this from happening too, wouldn't it? Yes. I mean, so it's... I feel like Mr. Hoster, I represent title companies, you know, all the time, and I've represented for 10 years, you know, and the title company may, you know, can very easily go look at the returns of process or they may make a business decision, it's not worth it to go look at the returns of process and we'll take the risk. But the fact is, the law is that you're charged with notice of what appears in the record and there's no time limit on it. There's nothing in the law to support... I think it would be a rewriting of the law. I mean, what we're looking about here, and I certainly understand the public policy interest in making sure subsequent purchasers to a share of sale are somewhat protected. However, at the same time, we have somebody who... we have a lender who lends good money in exchange to receive a mortgage lien and that lien is now reportedly extinguished and they lose all their security. That's all good policy. Let's get back. Who's Larry? Larry Goldstein. He represented, it's on the record, is it not, that he was Saxon's attorney? So my understanding is, so Kimberly Weissman was the attorney for plaintiff mortgage first. My understanding is Kimberly Weissman is a solo practitioner and she occasionally asked Larry Goldstein to cover her calls in Judge Siegel's courtroom. Correct. So he was appearing that day. He was appearing that day. He checked in for mortgage first. So he really was an attorney for the plaintiff mortgage first in that foreclosure proceeding. Not Saxon. Not Saxon. Alleged or not successor to Taylor Bean. Correct. I also, just one small point. Even though he says it's on the record, he represents. Yes, and I don't know if he just misspoke, if he got confused. I don't know. Is he prohibited from representing both? He didn't represent Saxon. Saxon had just been served on October 8th and he was appearing in court on November 10th. So in other words, so Mr. Saunders is out because there's no paper documentation to prove his service. Right. Right, and the Supreme Court has said, you're charged with knowledge of what is in the record of that foreclosure proceeding and you are charged with knowledge of what's in the return of service. Many of these cases, Phil, Concord Air, it dealt with defective affidavits. Where there was an affidavit showing proof of service and the court said, oh, you should have known there was a defect in here. You should have known that the plaintiff didn't diligently serve the defendant and therefore notice by publication wasn't sufficient. So that's even, I think, a stricter standard. Here we're just saying, hey, you should have seen that there was no affidavit of service and that should have put you on inquiry notice. Thank you. Okay, thank you. Thank you both for your arguments here today. This matter will be taken under advisement. This issue right now will be in recess.